# Devor's Appeal.

Where a mortgage was taken by a vendor, on one-third and one-third of a sixth of various tracts of land, which the mortgagees took expressly subject to prior liens against former owners of the land; in distributing the proceeds of sale of the land, which was sold at sheriff's sale, the mortgagee will not be confined to one-third and one-third of a sixth of the balance of the money, after payment of the prior liens and costs; but if they were paid by the other portions of the land, except one-third, and one-third of a sixth, then that amount of the purchase money would be applicable to the mortgage—in preference to judgments, subsequent to the mortgage obtained against the owners of the land, and existing at the time of the sale.

This was an appeal from the decree of the court of Common Pleas of Perry county, distributing money arising from the sale of the real estate of Postley and of McGowan and McKeehan. The land was situate in Perry county, and consisted of several thousand acres, on a part of which a furnace was erected.

The transfers of the land were as follows:

Power sold to Postley and took a mortgage; Watts obtained a judgment *vs.* Postley.

Postley conveyed to his sons.

The Postley's, father and sons, conveyed to McKeehan and Henry, subject to the payment of all liens then on the property.

McKeehan and Henry sold one-third to McGowan, and one-third to Fulwiler.

Henry's interest was sold at sheriff's sale, to McGowan, McKeehan and Fulwiler.

Fulwiler sold his one-third and one-third of a sixth, to Cathcart, subject to the payment of judgments and liens.

Cathcart sold to McGowan and McKeehan, "under and subject to the payment of the judgments and liens thereon, which included the Powers' mortgage, and the Watts' judgment. Cathcart received a mortgage. His mortgage was for $15,000.

Finally, the property was sold at sheriff's sale, as the property of McGowan and McKeehan. The amount of the sales was about $16,042.

It was contended that under the agreements entered into by Cathcart, he was not entitled to receive the amount of certain assignments to him, on the *sci. fa.* on the Power mortgage, as he had made that debt his own under seal; and further, that the residue of the Power mortgage, and F. Watt's judgment shall first be deducted from the $16,042, and then, if the Cathcart mortgage is entitled to any part of the fund, it would be but one-third, and one-third of one sixth of the residue.

The claim of Cathcart was opposed by judgment creditors of McGowan and McKeehan, whose judgments were obtained after the taking and recording of Cathcart's mortgage. The property was sold on a *levari facias,* issued on the Power mortgage, and on writs of *venditioni exponas,* on judgments against McGowan and McKeehan.

It was contended on the part of Cathcart, that on equitable principles he was entitled to be paid, not only the assignments to him on the Power mortgage, but to be paid the entire residue, after paying the prior liens, inasmuch as that residue does not exceed 7-18ths of $16,042, the amount of the proceeds of sale.

The Court, WATTS President, decided that inasmuch as at the period when he took his mortgage, the original estate was incumbered only to the amount of part of what it sold for, the residue of that fund must be appropriated to Cathcart's mortgage.

Errors assigned:

1. The court erred in appropriating the entire residue of the proceeds of sale, after discharging prior liens, to the mortgage of A. Cathcart. They should have given but the one-third and one third of one sixth of that residue, and the other part of the residue to the judgments of the appellants.

2. The court erred in paying the judgment of F. Watts, out of the funds arising from the sale of the land not included in the mortgage of Power against Topley.

The case was argued by *Macfarlane,* for appellants; by *Junkin and Graham* for Cathcart; and by *Gantt* for Demaree; *McClintock* was concerned for Arnold and Darlington; *McIntire* was concerned for Wilson and Sieger.

The opinion of the court was delivered by

COULTER, J.—I dismiss from the case all considerations arising from the principle of subrogation or substitution, because that principle, although it may in some cases accomplish high purposes

of equity, yet like a sharp edged tool, unless it be discreetly used, is apt to wound somewhere. The facts do not warrant or require its application, and I would rather avoid than invite unnecessary complication. The money in court to be distributed, is the product of the sheriff's sale of the land subject to the liens of the contesting parties. The money is in place of the land and represents it. According to the relative position of those liens on the land, so is their relative positions in regard to the money in court. At the time McGowan and McKeehan gave the mortgage to Cathcart, they were the owners of the whole interest and estate in the land, subject to certain liens : the Postley mortgage, the Frederick Watts' judgment, and the balance of the Fulwiler mortgage. The judgment of Frederick Watts, however, was a lien upon other property not covered by the mortgages, and according to a well settled rule, it is shifted on to the fund, on which the liens next in propinquity have no hold. This does perfect equity to all parties, because subsequent judgment creditors are subordinate in equity as well as law, not only to the Watts judgment, but to that mortgage, Cathcart's, which will be relieved *pro tanto* by this operation. The matter principally mooted at the bar, was whether Cathcart's mortgage was entitled to come in on the whole fund, although it only covered one-third, and one-third of one sixth of the land, in preference to, and exclusion of junior judgment creditors. I do not well see how there can be a reasonable doubt. The mistake or confusion of ideas arises from the hypothesis that Cathcart's mortgage covered only a specific part, one-third and one-third of one-sixth of the land, and that of course it would be entitled only to that proportion of the fund after paying the prior liens. But not so. The Cathcart mortgage was a lien on the whole and every part of the land, and if all the land but one-third and one-third of one sixth was taken away by Postley's claim and Topley's, then that would remain to Cathcart's mortgage, which covered that amount of the whole land. In other words Cathcart was entitled to one-third and one-third of one-sixth of the whole heap. But if Postley's and Topley's claim took away three-fourths of the heap, Cathcart would be entitled to all the balance. And so of the money; Postley's lien and Topley's, which I consider together, were entitled to take their full measure out of the money, and if less than one-third and one-third of one-sixth remained, Cathcart's mortgage was entitled to it, because it was entitled to one-third and one-third of one sixth of the whole money. This distribution does injustice to no one. The subsequent judgment creditors had no grip on the land or the fund, until Cathcart was satisfied ; their mistake lies in the assumption that they were entitled to run up their lien specifically upon that portion of the land, or rather that proportion not designated in Cathcart's mortgage, as if their liens were of equal date, without

considering that Cathcart's lien covered every part of the land to the extent of one-third and one-third of one sixth of its value, yielding only to the prior liens.

The decree of the court below is affirmed.